UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

UNITED STATES *ex. rel,*
MARY J. PATZER

        Filed *In Camera* pursuant to
        31 U.S.C. § 3730(b)(2).

Plaintiff/Relator,

        Civil Action File No. \_\_\_\_
        COMPLAINT FOR DAMAGES
        AND INJUNCTIVE RELIEF
        UNDER 31 U.S.C. § 3730
        FEDERAL FALSE CLAIMS ACT

v.

UNITED TECHNOLOGIES CORPORATION,
SIKORSKY AIRCRAFT CORPORATION,
SIKORSKY SUPPORT SERVICES, INC.
and
DERCO AEROSPACE, INC.

Defendants.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF UNDER 31 U.S.C. § 3730
FALSE CLAIMS ACT**

NOW COMES Plaintiff/Relator Mary Patzer, by her attorneys, Nola J. Hitchcock Cross and Noah Reinstein of Cross Law Firm, S.C. and as and for her complaint against the above named Defendants states as follows:

### I. INTRODUCTION

1. This is an action to recover damages and civil penalties on behalf of the United States of America ("United States Government") arising from false billing claims made or caused to be made by United Technologies Corporation ("UTC"), Sikorsky Aircraft Corporation ("Sikorsky"), Sikorsky Support Services, Inc. ("SSSI") and Derco Aerospace, Inc ("Derco")

(Collectively "Defendants") to the United States Government and its agents and intermediaries in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA"). Beginning in at least July 1, 2006, Defendants have submitted to the United States Department of Defense false billing statements which totals included a twenty percent (20%) "mark-up" to the invoice price of items that Derco obtained from vendors. Such invoices are false billings because a "mark-up" is not allowed under the relevant contract and regulations.

2. The False Claims Act ("FCA") provides that any person who knowingly submits or causes to be submitted to the United States Government a false or fraudulent claim for payment or approval is liable for a civil penalty of up to $11,000 for each such claim submitted and three times the amount of damages sustained by the government. The FCA empowers persons with information regarding such false claims to bring an action on behalf of herself (the "Relator" or "Patzer") and the United States and to share in any recovery. The complaint must be filed under seal for 60 days, without service on the Defendant while the United States Attorney General conducts an investigation of the allegations in the Complaint and determines whether to intervene in the action.

3. Pursuant to the FCA, Mary Patzer ("Patzer") seeks to recover, on behalf of the United States and herself, damages and civil penalties arising from fraudulent and improper charges contained in claims for payment that the Defendant submitted or cause to be submitted to the United States Government for impermissible markups as well as damages for Patzer's wrongful termination in retaliation for her complaints about the fraudulent conduct of Defendants.

4. Prior to filing, Patzer met with an Assistant United States Attorney for the Eastern District of Wisconsin and investigators from Federal Bureau of Investigation in conjunction with

2

the United States Department of Justice to inform them of her intent to pursue this action and to provide information relevant to this action.

## II. PARTIES

5. UTC is a publicly traded Delaware corporation with its principle corporate office located in the City of Hartford, State of Connecticut 06101.

6. According to its website UTC, "is a diversified company whose products include Carrier heating and air conditioning, Hamilton Sundstrand aerospace systems and industrial products, Otis elevators and escalators, Pratt & Whitney aircraft engines, Sikorsky helicopters, UTC Fire & Security systems and UTC Power fuel cells." UTC employs over 200,000 employees, its 2009 annual revenue was in excess of $52 billion, including more than $9 billion in sales to the United States Government in 2009.

7. Sikorsky is a Delaware corporation and a subsidiary of UTC with its principle corporate office located in the City of Stratford, State of Connecticut 06615.

8. According to its website, Sikorsky, "is a world leader in the design, manufacture and service of military and commercial helicopters; fixed-wing aircraft; spare parts and maintenance, repair and overhaul services for helicopters and fixed-wing aircraft; and civil helicopter operations."

9. Sikorsky Support Services, Inc. (d/b/a Sikorsky Aerospace Maintenance) is a Delaware corporation and a subsidiary of Sikorsky with its principle corporate office located in the City of Stratford, State of Connecticut 06615.

10. SSSI is the service subsidiary of Sikorsky. SSSI supports military and commercial operators by providing aviation maintenance, logistics and technical services.

11. Derco is a Wisconsin corporation and a wholly-owned subsidiary of Sikorsky with its principle corporate office located at 8000 West Tower Avenue in the City of Milwaukee, State of Wisconsin 53233.

12. According to its website Derco, "is a world leader in providing aircraft spares distribution, logistics solutions, repair services, and technical solutions to military and commercial customers around the globe. Through solid relationships with premier original equipment manufactures (OEMs), Derco maintains one of the largest and most diversified aircraft spares inventories in the world. Today, Derco is a full-service logistics and solutions provider, supporting military and commercial fleets in 67 countries."

13. Patzer is a United States citizen and a resident of the City of Sun Prairie, County of Dane, State of Wisconsin residing at 274 Kelvington Drive, 53590.

14. Patzer was hired by Derco in or around July 2002 as a financial analyst. In or around late 2003 Patzer became Derco's Assistant Controller for Financial Reporting and Sarbanes-Oxley Compliance. By 2009 Patzer's position had been re-titled to Assistant Controller of US Government Accounting and Sarbanes Compliance.

15. As the Assistant Controller of US Government Accounting and Sarbanes Compliance, Patzer's direct supervisor was Derco's Controller Amy Skaar. Patzer's second level supervisor was Derco's CFO, Peter Winkler. In her position, Patzer was the lead and point of contact for all Defense Contract Management Agency ("DCMA") and Defense Contracting Audit Agency ("DCAA") audit activity. Patzer was also responsible for maintaining Sarbanes-Oxley compliance and ensuring that Derco was complaint with UTC's internal policies and protocols.

4

16. In the course her employment, Patzer gained first-hand knowledge of fraudulent and improper billing practices by Derco and its parent and affiliated companies. Such practices included presenting inflated bills for costs to the United States Government based on an unauthorized and undisclosed markup of parts and repair services obtained from suppliers, billed to SSSI and ultimately billed to the United States Government.

17. Patzer brings this action on behalf of the United States of America pursuant to 31 U.S.C. § 3730(b)(1).

## III. JURISDICTION AND VENUE

18. This Court has jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this court for actions brought pursuant to 31 U.S.C. § 3730.

19. The Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) which authorizes nationwide service of process, and because Derco has its principle office in this district.

20. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because Derco has its principle office in this district.

## IV. PRELIMINARY STATEMENT OF DEFENDANT'S FRAUDULENT CONDUCT

21. Patzer reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

22. During the period of in or around July 2006 through September 2010 SSSI had a contract with the United States Navy (number N00019-06-D-0017) to provide depot-level aircraft maintenance and logistics support for the USN T-34, T-44 and T-6 military trainer aircraft programs. The work is performed at Naval Air Station Pensacola, Florida; Naval Air

Station Whiting Field, Florida; Naval Air Station Corpus Christi, Texas; and other assorted satellite sites. Upon information and belief, said contract has been extended and is still currently in effect.

23. Contract N00019-06-D-0017 states, *inter* alia, "For parts and material or services procured from a vendor, the actual cost shall be the actual catalog/market price from the vendor. Fee/Profit is unallowable on the actual price of parts and material, services and shipping costs."

24. SSSI has an agreement (Inter-entity Work Authorization, "IWA") with its sister company, Derco, for Derco to perform work under contract N00019-06-D-0017 including, but not limited to, ordering component parts and materials from vendors to be used on the contract. The IWA specifies that the work performed under contract N00019-06-D-0017 is not "commercial". Such specification that the work is not "commercial" is pursuant to UTC policy and dictates that the work must be performed and billed in accordance with contract, regulations, and legal requirements governing military contracts.

25. As part of her duties as the Assistant Controller of US Government Accounting and Sarbanes Compliance for Derco, Patzer was responsible for preparing Derco's "Disclosure Statement" to the DCAA of the United States Government for signature by Derco's Chief Financial Officer, Peter Winkler. The Disclosure Statement verifies Defendant's practices in compliance with contract N00019-06-D-0017, law and regulations, with regard to the services and products provided and the cost, pricing, and billing methods which are utilized.

26. Patzer prepared the said Disclosure Statement for submission to the DCAA. Derco's Chief Financial Officer reviewed, approved, and signed the Disclosure Statement which Patzer prepared and the Disclosure Statement was submitted to the DCAA.

6
Case 2:11-cv-00560-LA   Filed 06/10/11   Page 6 of 13   Document 1

27. The said Disclosure Statement verifies that all company transactions within the UTC companies of non-commercial products and services are passed through " at cost". The "at cost" requirement is dictated by both UTC policy and Federal Acquisition Regulations ("FARs") which govern and are incorporated by reference into contract N00019-06-D-0017.

28. UTC, SSSI and Derco are one and the same entity for the purposes of contracting with the United States Government.

29. Pursuant to FAR 44.101, "Contractor means total contractor organization or a separate entity of it, such as affiliate;" FAR supart 2.1 defines "Affiliates" as associated business concerns or individuals if, directly or indirectly, (1) either one controls or can control the other; or (2) A third party controls or can control both."

30. Pursuant to FAR subpart 2.1 a "commercial item" is, any item, other than real property, that is of a type customarily used by the general public or by non-governmental entities for purposes other than governmental purposes and has been sold, leased, or licensed to the general public; or has been offered for sale, lease, or license to the general public.

31. As specified in the Interentity Work Authorization from SSSI, the parts and materials provided by SSSI to the United States Navy under contract N00019-06-D-0017 are not commercial items. The said contracted parts and materials are not sold or offered for sale to the general public. The said contracted parts and materials are sold only pursuant to military contracts.

32. SSSI uses Derco solely as an intermediary between the vendors and SSSI to obtain the parts and materials from the vendors for sale and billing to the United States Government under contract N00019-06-D-0017.

7
Case 2:11-cv-00560-LA   Filed 06/10/11   Page 7 of 13   Document 1

33. Derco places custom military orders with vendors, such as Hawker Beechcraft Corporation, for parts and materials which are sold and billed to the United States Government under contract N00019-06-D-0017.

34. Upon receipt of the custom order for parts and materials from Derco, Hawker Beechcraft Corporation or another custom vendor submits an invoice to Derco for the parts and materials obtained and the vendor ships such items directly to the Naval training locations in accordance with the requirements of contract N00019-06-D-0017.

35. Patzer was responsible for supervision of the accounts payable and for cutting checks and sending wire transfers to Hawker Beechcraft Corporation and other suppliers on this program for parts and materials ordered by Derco and shipped to the Navy directly by the vendor under contract N00019-06-D-0017.

36. All of the invoices that Derco submits to SSSI to bill to the United States for payment under contract N00019-06-D-0017 are for "noncommercial items."

37. The invoices that Derco submits to SSSI to bill to the United States Government for parts and materials under contract N00019-06-D-0017 contain a 20% profit mark-up.

38. According to UTC policy, on invoices that Derco submits to SSSI on the said contract, the amount of profit and cost of each part must be itemized separately. Patzer has first-hand knowledge that on invoices submitted from Derco to SSSI for parts and materials sold to the United States Government under contract N00019-06-D-0017, the profit mark-up included in the price is not separately stated or otherwise indicated in any way.

39. Contract Line Item Numbers ("CLINs") X023-X026, X045-X048, and X063-X064 in Contract N00019-06-D-0017 are "cost reimbursable". The parts and materials that

Derco purchases from vendors on behalf of SSSI are for the said CLINs. SSSI is required to invoice the actual catalog or market price from the vendor to the United States Government.

40. The items and materials Derco invoiced to SSSI for payment by the United States Government under Contract N00019-06-D-0017 did not list the actual catalog or market price from the vendor. The said invoices from Derco listed a price which was the catalogue or market price and a 20% profit mark-up combined. As above stated, a single price was stated on such invoices, without indicating any such mark-up had been applied.

41. Because Derco must pass through to SSSI the same cost that it has paid to the vendor on items sold under contract N00019-06-D-0017, Derco is prohibited from billing for any profit as a result of their transactions with vendors and SSSI.

42. In 2006, Derco issued a press release stating that "Derco Aerospace, Inc. recently secured a subcontract from Sikorsky Support Services, Inc. (SSSI) in support of the T-34/T-44/T-6A Contractor Logistics Support (CLS) Program from the U.S. government. Derco estimates that the subcontract could be worth as much as $20 million per year over 4.25 years if the Navy exercises all of its contract options."

43. Patzer has first-hand knowledge that Derco impermissibly marks up the invoice price that it receives from a vendor by approximately twenty percent in their invoicing to SSSI in direct violation of the applicable FARs, the said contract, and the said Disclosure Statement.

44. Upon receipt of the said Derco invoices which include the 20% profit mark-up without so stating, SSSI submits such invoices as claims for payment to the United States Government, including the 20% illegal profit due to Derco's fraudulent conduct described above.

45. The claims for payment submitted to the United States Government by SSSI are fraudulent based on the impermissible markup made by SSSI's sister company, Derco. The

billings appear on their face to be legitimate as SSSI is billing the same price to the government as it is being invoiced by Derco. These billings to the United States Government are fraudulent based on the impermissible 20% markup made by Sikorsky's subsidiary, Derco, and billed to the United States Government by SSSI and Sikorsky.

## V. COUNT I: FEDERAL FALSE CLAIMS ALLEGATION FOR FRAUDULENT BILLINGS BASED ON CONTRACT N00019-06-D-0017

46. Patzer reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

47. Through the markup which is a prohibited profit add-on in intra-company transactions that are passed through to the United States Government, as described *supra*, Defendants have knowingly submitted false claims for the purposes of obtaining compensation to which they would otherwise not be entitled. Defendants verified through their Disclosure Statement to the United States Government that they were not including any profit mark-up in their invoices for parts and materials under Contract N00019-06-0017.

48. Defendants knowingly defrauded the United States Government by verifying pay and billing practices which Defendants knew to be false based upon Defendants' own practices.

49. The United States of America has been damaged by all of the aforementioned misrepresentations and failures to comply with requisite laws, regulations, contract, and Disclosure Statement in an as of yet undetermined amount.

50. With respect to the aforementioned misrepresentations and failures to comply, Defendants knowingly made false claims to officials of the United States for the purpose of obtaining compensation and Defendants received such compensation from the United States Government as a result of Defendants' said false claims.

## VI. Count II Unlawful Retaliation and Conduct under Federal 31 U.S.C. § 3730(h): Unlawful Retaliation Against Relator

51. Patzer reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

52. 31 U.S.C. §3730(h), provides, "(1) Any employee... shall be entitled to all relief necessary to make that employee... whole, if that employee is... discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee... in furtherance of, other efforts to stop one or more violations of this subchapter."

53. On or around September 10, 2010 with knowledge that Derco and SSSI were improperly submitting invoices to the United States Government for payment as described, *supra*, Patzer discussed the issue of improper billing with Sikorsky's US Government Accounting Manager, Dawn Kawtucki.

54. Patzer had on-going discussions about the issues of non-compliance that she had discovered with Winkler for several weeks before approaching Kawtucki. Patzer approached Kawtucki because Winkler was unresponsive to Patzer's said concerns that the Government was being falsely billed with invoices which surreptitiously contained a profit mark-up.

55. Almost immediately after exposing the non-compliance issues to Kawtucki, Patzer was terminated. Derco informed Patzer that her position had been eliminated due to a "reduction in force" on or around September 30, 2010.

56. Patzer's duties were reassigned to an employee who had little or no knowledge of or experience with government military contracts, disclosure statements, FARs, CLINs or required "at cost" billing to the United States Government.

57. Derco discharged Patzer because of her lawful and protected conduct in furtherance of her efforts to stop Derco from violating the requirements for submission of claims for payment to the United States Government. Patzer has been damaged by Derco's retaliatory termination of her employment in an amount as of yet undetermined, but specifically including loss of employment, loss of salary and benefits, and damage to her career.

## PRAYER FOR RELIEF

WHEREFORE, the United States is entitled to damages from Defendants in accordance with the provisions of 31 U.S.C. §§ 3729-3733, as amended, of which up to twenty-five percent 25%) should be paid to the *qui tam* plaintiff, Mary Patzer, as Relator, and such further relief as this Court may deem appropriate or proper.

WHEREFORE, Patzer is entitled to damages for retaliatory discharge, including but not limited to reinstatement, double back pay and benefits, and special damages resulting from the damage to her career.

AND WHEREFORE, Plaintiff/Relator requests that judgment be entered against Defendants, ordering that:

a. Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 *et seq.*;

b. Defendants pay an amount equal to three times the amount of damages the United States has sustained because of defendant's actions, plus a civil penalty against defendant of not less than $5,000 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

c. Plaintiff/Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

d. Plaintiff/Relator be awarded reinstatement with the same seniority status, two-times the amount of back pay and interest. 31 U.S.C. § 3730(h);

e. Plaintiff/Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d);

f. The United States and Plaintiff/Relator be granted all such other relief as the Court deems just and proper.

**PLEASE TAKE NOTICE THAT THE PLAINTIFF/RELATOR DEMANDS THE ABOVE ENTITLED ACTION TO BE TRIED TO A 12-PERSON JURY.**

Dated this 8th day of June, 2011.

Lawyer's Building
845 North 11th Street
Milwaukee, WI 53233
Phone: (414) 224-0000
Fax: (414) 273-7055

**Cross Law Firm, S.C.**
Attorneys for Mary Patzer

By: _____
Nola J. Hitchcock Cross
Wisconsin Bar Number: 1015817
Noah Reinstein
Wisconsin Bar Number: 1056754