UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA, *ex rel.*
MARY PATZER, Peter A. CIMMA,

        Plaintiffs,

    v.

SIKORSKY AIRCRAFT CORPORATION,
SIKORSKY SUPPORT SERVICES, INC., and
DERCO AEROSPACE, INC.,

        Defendants.

Case Nos.:  2:11-cv-00560-LA
           2:14-cv-01381-LA

**UNITED STATES OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO STRIKE AFFIRMATIVE DEFENSES CONTAINED
IN DEFENDANTS' ANSWERS TO THE UNITED STATES SECOND AMENDED
COMPLAINT (CASE NO. 2:11-CV-00560-LA) AND COMPLAINT IN
INTERVENTION (CASE NO. 2:14-CV-01381-LA)**

## INTRODUCTION

The Court should strike the Defendants' affirmative defenses and not provide leave to re-plead them. First, to comply with Federal Rule of Evidence 8(c), a defendant must plead "sufficient factual matter, accepted as true, to state an affirmative defense to relief that is plausible on its face." *United States Securities and Exchange Commission v. Sachdeva,* No. 10-C-747, 2011 WL 933967, *1 (E.D. Wis. Mar. 16, 2011). In the affirmative defenses contained in their answers in this consolidated matter, however, the Defendants merely recite bare-bones invocations of the defenses and thus fail to comply with the fundamental pleading requirements of Rule 8(c). In addition, the Court should strike two of Defendants' affirmative defenses because Defendants failed to plead with particularity matters that must be so pleaded in accordance with Federal Rules of Civil Procedure 9(c) and (e). Lastly, because the affirmative defenses Defendants attempted

to assert are not legally available against the United States as a matter of law, it would be futile to grant the Defendants leave to re-plead them.

## BACKGROUND

Defendant Sikorsky Support Services, Inc. ("SSSI") served as the prime contractor on successive contracts for the maintenance of the Navy's fleet of T-34, T-44, and T-6 aircraft. *See Patzer* ECF 80 at ¶ 37; *Cimma* ECF 39 at ¶ 40. The operative complaints in these consolidated cases describe two distinct, fraudulent schemes in the course of these contracts. First, SSSI and defendant Derco Aerospace, Inc. ("Derco"), acting at the direction of their parent company, defendant Sikorsky Aircraft Corporation ("SAC"), engaged in an illegal cost-plus-percentage-of-cost ("CPPC") subcontract agreement.[1] *See Patzer* ECF 80 at ¶¶ 43-53; *Cimma* ECF 39 at ¶¶ 3, 24-39, 45-49. This illegal CPPC subcontracting scheme artificially inflated by 32% the cost of parts and materials supplied to the Navy under the prime contracts. *See id.*

Second, despite billing the Navy for the full (and illegally inflated) amount shown on Derco's invoices, SSSI and Derco agreed that SSSI could take chargebacks or credits against Derco's invoices. *See Patzer* ECF 80 at ¶¶ 60-74; *Cimma* ECF 39 at ¶¶ 18-23, 40-49. SSSI then failed to pass these credits on to the Navy and continued to charge the Navy as if SSSI had paid or would pay the full amount shown on Derco's invoices, in violation of federal law and the terms of the contracts. *See id.*

---

[1] A cost-plus-percentage-of-cost agreement exists when a prime contractor (such as SSSI) agrees to pay its subcontractor (such as Derco) its actual costs plus a predetermined percentage of the subcontractor's actual costs of performance. *See Urban Data Systems, Inc. v. United States*, 699 F.2d 1147, 1150 (Fed. Cir. 1983). Such contracts are void *ab initio*, *id.,* because they violate public policy and are in contravention of federal procurement statutes and regulations. *See* 10 U.S.C. § 2306(a); 41 U.S.C. § 3905(a); 48 C.F.R. § 52.244-2(h).

2

These two fraudulent schemes give rise to a variety of counts against the Defendants under the False Claims Act, 31 U.S.C. §§ 3729-3733, under the common law theories of unjust enrichment and breach of contract, and (with respect to the *Cimma* case) for violation of Truth in Negotiations Act (TINA), 10 U.S.C. § 2306a.[2]

## LEGAL STANDARD

The courts should strike any "insufficient defense" from a pleading. *See* Federal Rule of Civil Procedure 12(f). A motion to strike "remove[s] unnecessary clutter from the case." *Heller Financial Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989). Accordingly, striking insufficient affirmative defenses serves "to expedite, not delay," the resolution of the case. *Id.*

Affirmative defenses are subject to the same Rule 8(c) pleading requirements as complaints. *Id.* at 1295. Accordingly, the Seventh Circuit has rejected affirmative defenses that are merely "bare bones allegations" that "omitted any short and plain statement of facts and failed totally to allege the necessary elements of the alleged claim [sic]." *Id.* As this Court has further explained, a defendant's pleading of an affirmative defense is inadequate when the defendant fails to "plead any information that would enable the plaintiff to figure out how the defense could defeat their claims." *Whitehead v. Discover Bank*, No. 15-C-0261, 2015 WL 11017803, *1 (E.D. Wis. November 20, 2015) (Adelman, J.). In such circumstances, the court should strike the affirmative defense because "[t]he plaintiffs (and the court) are left to guess at how the defense could succeed.

---

[2] Counts alleging violations of the Anti-Kickback Act, 41 U.S.C. § 8701, were dismissed pursuant to the Court's Decision and Order of July 20, 2018. *See* ECF 96.

3

Accordingly, the defendants' answer does not provide the plaintiffs with notice and the opportunity to demonstrate why the defense should not prevail." *Id.*

The Court should decide a motion to strike an affirmative defense under the same standard used to decide a motion to dismiss for failure to state a claim. *Sachdeva,* 2011 WL933967, at *1. Thus, an affirmative defense should be stricken unless it contains sufficient factual matter, accepted as true, to state an affirmative defense to relief that is plausible on its face. *Id. See also Milwaukee Electric Tool Corp. v. Hitachi Koki Co., Ltd.,* No. 09-C-948, 2012 WL 1952977, *5 (E.D. Wis. May 29, 2012).

A defendant must plead certain defenses and denials with even greater factual specificity than the plausibility standard required by Rule 8(c). A denial of a condition precedent to bringing suit must be pleaded with particularity. *See* Fed.R.Civ.P. 9(c). Similarly, a defense that relies on a judgment or decision of a court, quasi-judicial tribunal, board or officer must specifically "plead the judgment or decision." *S*ee Fed.R.Civ.P. 9(e).

## ARGUMENT

### I. Defendants' Bare-Bones Affirmative Defenses Should Be Stricken Under Rule 8(c).

Each of Defendants' eleven enumerated affirmative defenses in their answers was pleaded in the most bare-bones fashion imaginable. For example, Defendants assert in their second affirmative defense that the Government's claims "are barred by the equitable defenses of waiver and ratification." *Patzer* ECF 99 & 100 at Affirmative Defense No. 2. Defendants have not (and cannot) allege any facts supporting their conclusory assertion that the United States waived any right or ratified any conduct of Defendants. What right did the government waive? What conduct of the Defendants did it ratify? Defendants do not say. Defendants have scrupulously

4

avoided pleading a single fact in support of their affirmative defenses, let alone sufficient facts to make any of their defenses plausible as required by Rule 8(c).  *See Heller*, 883 F.2d at 2194.

Defendants' bare-bones pleading is glaring because they have had ample time and written discovery to shore up their defenses with actual facts.  The United States filed its operative complaints in the *Cimma* and *Patzer* matters on May 26, 2017 and November 1, 2017, respectively. Defendants did not answer these complaints until September 4, 2018.  Accordingly, Defendants had over 15 months in *Cimma* and over nine months in *Patzer* to conduct any investigation necessary to provide factual support for their affirmative defenses.[3]  The parties, moreover, have engaged in written discovery since early 2015.  *See Patzer* ECF 62 & 83.  In discovery, the Government responded to Defendants' interrogatories with sworn answers and to Defendants' document requests by producing large quantities of documents.

Under these circumstances, Defendants' choice to plead bare-bones affirmative defenses can mean only one of two things:   Either (1) Defendants have no facts to back up their defenses; or (2) Defendants have chosen to withhold those facts as a matter of litigation strategy.   In either event, the Court should strike all of Defendants' affirmative defenses for failure to comply with Rule 8(c).

## II.    <u>Defendants Failed To Plead Their Defenses With Particularity, Where Required</u>.

The Court should also strike the first and third affirmative defenses because Defendants failed to plead these affirmative defenses with particularity as they were required to do under Federal Rules of Civil Procedure 9(c) and 9(e), respectively.

-----

[3] In reality, the Defendants have been aware of most of the Government's allegations in *Patzer* since the original complaint-in-intervention was filed on October 14, 2014.  *See Patzer* ECF 44.

5

### A. Defendants Failed To Plead Affirmative Defense No. 1 With Particularity.

Defendants assert in affirmative defense number 1 that all of the Government's claims are "barred because the United States failed to exhaust available contractual and/or administrative remedies before bringing this action." *See Patzer* ECF 99 and 100, at Affirmative Defense No. No. 1. Defendants' assertion that the United States failed to exhaust its remedies is simply another way of saying that the United States failed to satisfy a condition precedent to filing suit. *See Eison v. Rozmarynoski,* No. 12-C-931, 2014 WL 4851891, *6 (E.D. Wis. September 29, 2014) (Adelman, J.) ("[e]xhaustion of administrative remedies is a condition precedent to suit"). A party asserting a failure of a condition precedent, however, must plead that failure with particularity. *See* Fed.R.Civ.P. 9(c) ("when denying that a condition precedent has occurred or been performed, a party must do so with particularity").

Defendants failed to satisfy this standard because they did not identify with particularity any specific contractual or administrative remedy that the Government failed to exhaust. Accordingly, the Court should strike the first affirmative defense for lack of particularity. *See Runnemede Owners, Inc. v. Crest Mort. Corp.*, 861 F.2d 1053, 1057-58 (7th Cir. 1988) (party asserting failure of condition precedent in contract must plead the failure with particularity under Fed. R. Civ. P. 9(c)); *Fort Howard Paper Co. v. Standard Havens Co.*, 119 F.R.D. 397, 405 (E.D. Wis. 1988) ("[u]nder Rule 9(c), a denial of a condition precedent that is not made specifically and with particularity must be stricken"); *Hall v. Plasterers' and Cement Masons' Intern. Ass'n Local Union 143,* 188 F.Supp.2d 1013, 1018 (S.D. Ill. 2001) ("[t]he defendant must raise the defense [of failure to exhaust] 'specifically and with particularity,' Fed.R.Civ.P. 9(c), or he waives it").

6

## B. **Defendants' Failed to Plead Affirmative Defense No. 3 With Particularity.**

In their third affirmative defense, Defendants assert that, "[t]o the extent the alleged violations [at issue in the Government's claims] have been litigated, released, subject to audit or other administrative determinations, or otherwise compromised previously, they are barred by applicable law, including but not limited to the doctrines of accord and satisfaction, payment, waiver, release, and res judicata." *See Patzer* ECF 99 and 100, at Affirmative Defense No. 2. Tellingly, Defendants failed to identify any specific judgment, audit, or administrative determination that they contend conclusively decided issues relevant to the Government's claims.

The third affirmative defense thus failed to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(e), which requires a party specially to "plead the judgement or decision" on which it relies.   The pleader must "describe the judgment with enough particularity to identify it— the name of the court and the cause, the time and place of rendition, the amount, the person in whose favor and against whom it was rendered…."   *See Bowser v. Casanave*, 44 F.Supp. 501, 504 (S.D.N.Y. 1940).   *See also* Wright & Miller, *Federal Practice and Procedure*, § 1306 (Rule 9(e) "requires that the court, body, or person rendering the judgment or decision be identified, the date of the judgment or decision be given, the parties to the earlier proceeding be named, and the character and effect of the judgment or decision be specified.").   Because Defendants failed to identify with particularity any judgment or decision of any court, administrative agency, board or officer, the Court should strike their third affirmative defense.

## III.   **The Court Should Not Grant Defendants Leave To Re-Plead Because It Would Be Futile.**

Ordinarily, a court may grant a party leave to amend a deficient pleading.   But, leave to amend should be denied when amendment would be futile.  *See, e.g., Bogie v. Rosenberg*, 705

7

F.3d 603, 608 (7th Cir. 2013).   Since Defendants' affirmative defenses are either (1) unavailable against the United States as a matter of law or (2) unavailable against the United States except in extraordinary circumstances that the Defendants cannot allege here, those defenses are futile. Accordingly, the Court should not grant Defendants leave to re-plead their affirmative defenses.

### A.  Affirmative Defense No. 1 (Failure to Exhaust Contractual/Administrative Remedies) Should Be Stricken Without Leave to Re-Plead.

As noted above, Defendants fail to identify any contractual or administrative remedies the Government failed to exhaust.   Based on the Government's experience in prior cases, the Government believes that Defendants likely intend to argue that the Government did not seek a contracting officer's decision before filing suit.   If so, it would be futile to permit leave to amend because the Government's claims are exempted from the requirement to seek a contracting officer's decision before filing suit.

The prime contracts at issue in these cases incorporated by reference 48 C.F.R. § 52.233-1, which subjects the contracts to the Contracts Disputes Act (CDA), 41 U.S.C. §§ 7101-7109. Although the CDA generally requires that a dispute relating to a contract be submitted to a contracting officer for a decision prior to filing suit, 41 U.S.C. §§ 7103 and 7104, the CDA contains two express exceptions to that requirement.   Both of these exceptions are applicable here.

The first exception is for "a claim or dispute for penalties or forfeitures prescribed by statute or regulation that another Federal agency is specifically authorized to administer, settle, or determine."   *See* 41 U.S.C. §7103(a)(5).   *See also* 48 C.F.R. § 33.210(a) (providing that a contracting officer may not decide, "[a] claim or dispute for penalties or forfeitures prescribed by statute or regulation that another Federal agency is specifically authorized to administer, settle, or

8

determine"). The False Claims Act falls precisely within this exception. *See Martin J. Simko Constr., Inc. v. United States*, 852 F.2d 540, 543-548 (Fed.Cir. 1988) ("Congress could not have stated more clearly its intent to give the Attorney General specific authority to 'administer, settle, or determine' claims or disputes under the False Claims Act. This specific authority places claims brought under the False Claims Act squarely within the exception to the 'all disputes' authority of the [contracting officer] carved out in section 605(a) [now § 7103(a)(5)]."). Because the Government's FCA claims are exempted from the CDA's requirement that the Government obtain a contracting officer's decision, the Defendants' exhaustion defense is futile as applied to the Government's FCA claims (Counts I-VIII in *Patzer* and Counts I-II and VIII in *Cimma*).

The second exception provides that agencies and their contracting officers are not authorized "to settle, compromise, pay, or otherwise adjust any claim involving fraud." 41 U.S.C. § 7103(c)(1). *See also* 48 C.F.R. § 33.210(b) (expressly stating that a contracting officer's authority does not extend to "[t]he settlement, compromise, payment or adjustment of any claim involving fraud"). The Government's FCA counts are manifestly claims "involving fraud," and, therefore, the Government's FCA claims are beyond the authority of any agency or contracting officer to settle, compromise, pay, or otherwise adjust. *United States of America v. Menominee Tribal Enterprises,* 601 F.Supp.2d 1061, 1078 (E.D. Wis. 2009). The Government, therefore, was not required to seek a contracting officer's determination prior to filing its FCA claims in the second exception as well.

The second exception for matters "involving fraud" also applies to the Government's remaining common law and TINA claims in these cases. Although fraud is not an element of those claims, they are intimately bound up with and premised upon on the same set of facts

9

underlying the Government's FCA claims, *i.e.*, Defendants' illegal use of cost-plus-a-percentage-of-cost subcontracting and Defendants' improper chargebacks.   In light of the close connection between the Government's FCA claims and its common law and TINA claims, all of the Government's claims "involve fraud" within the meaning of the CDA's second exception.   *See Menominee Tribal Enterprises,* 601 F.Supp.2d at 1078 ("As the Government notes, courts interpreting this exception have generally done so broadly, principally because the statute itself refers to claims 'involving' fraud, which suggest the exception is meant to allow the Government to sue in district court whenever fraud is at issue, even if the claim itself is not 'for' fraud."); *United States ex rel. Dye v. ATK Launch Sys., Inc.*, 2008 WL 4642164, at *2 (D. Utah Oct. 16, 2008) ("the CDA exempts . . . all claims involving fraud.  Thus, when a breach of contract or unjust enrichment claim is intimately bound up with and part of the same cause or controversy as [a False Claims Act] claim, the government need not pursue the claims in two separate fora, but may instead pursue all claims in federal district court.") (internal quotations omitted).

In light of the application of the CDA's exceptions to the general requirement of a contracting officer's determination, the Government was not required to exhaust any administrative remedies prior to filing suit.   *See Al-Saddiqi v. Nehls,* 522 F.Supp.2d 876-877 (E.D. Wis. 2007) (the requirement to exhaust remedies is excused where "the agency lacks the ability … to resolve the issue or grant the relief requested").   The Court, therefore, should not grant the Defendants leave to re-plead their first affirmative defense because it would be futile to attempt to do so.

10

### B. Affirmative Defenses Nos. 2 (Waiver and Ratification), 3 (Accord and Satisfaction, Waiver, Release and Res Judicata) and 5 (Estoppel) Should Be Stricken Without Leave to Re-plead.

The Court should strike Defendants' second, third, and fifth affirmative defenses without leave to re-plead for at least three reasons.

First, only the Attorney General or his *authorized* designee in the Civil Division can settle, waive, release, or compromise claims under the FCA or other claims "involving fraud." Since Defendants have not and cannot allege that the Attorney General or his *authorized* designee has settled, waived, released, or compromised the claims at issue, all these affirmative defenses are futile.

Second, the Defendants cannot invoke equitable defenses such as waiver, ratification, and estoppel to obtain or retain money expended in derogation of appropriations law. Congress explicitly prohibited CPPC subcontracting and the expenditure of appropriated funds in connection with such subcontracts. Defendants, therefore, cannot rely on any equitable defenses to defeat the Government's claims based on their illegal CPPC subcontracting.

Third, the Seventh Circuit has held that estoppel against the Government must be based on extraordinary circumstances that Defendants cannot plead here.

#### 1. Affirmative Defenses Nos. 2, 3 and 5 Are Futile Because Defendants Cannot Allege Action by the Attorney General or His Authorized Designee.

As discussed above, agencies and contracting officers are expressly powerless "to settle, compromise, pay or otherwise adjust any claim involving fraud." *See* 41 U.S.C. 7103(c)(1) (agencies lack authority); 48 C.F.R. § 33.210(b) (contracting officers lack authority). Instead, the Department of Justice, and more specifically its Civil Division, possesses exclusive authority to

11

resolve claims involving fraud. The Department of Justice, as directed by the Attorney General, is responsible for "the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested." *See* 28 U.S.C. § 516. Likewise, the FCA provides the Attorney General with exclusive responsibility to investigate, litigate, and settle FCA suits. *See* 31 U.S.C. § 3730(a) & (c)(2)(B). The Attorney General, in turn, delegated his authority to the Department of Justice's Civil Division, including expressly frauds under the FCA and CDA. *See* 28 C.F.R. Part O, Subpart I, § 0.45(d); 28 F.F.R. Part O, Subpart Y.

In matters in which the Government asserts FCA or other claims "involving fraud," courts have routinely rejected defendants' attempts to assert the defenses of waiver, ratification, or accord and satisfaction based on some action, inaction, or decision by an agency or official outside of an authorized official of the Department of Justice. *See United States v. DynCorp International, LLC.,* 282 F.Supp.3d 51, 56-57 (D.D.C. 2017) (dismissing affirmative defenses of waiver and accord and satisfaction); *United States v. HCR Manor Care, Inc.*, No. 09-cv-00013, 2015 WL 11117429, *1 (E.D. Va. December 9, 2015) ("Waiver fails as a matter of law because violations of the FCA can only be waived by the United States Department of Justice."); *United States v. Honeywell*, 841 F.Supp.2d 112, 115-116 (D.D.C. 2012) (dismissing affirmative defense of waiver absent proof Attorney General relinquished the right to sue); *United States ex rel. Dye v. ATK Launch Sys., Inc.*, No. 06-cv-39, 2008 WL 4642164, at *3 (dismissing affirmative defenses of waiver and ratification because defendant "has not alleged that the Department of Justice waived [the Government's] rights"). Likewise, courts have also rejected an affirmative defense of estoppel with respect to fraud claims when a defendant relies on the acts of an official who was *not* one of the Attorney General's authorized designees. *See DynCorp Int'l*, 282 F.Supp.3d at 57;

12

*see also United States v. Killough*, 848 F.2d 1523, 1526-27 (11th Cir. 1998) (even if criminal AUSA promised defendant civil immunity in plea agreement, United States cannot be estopped to bring an FCA case against the same defendant because the criminal AUSA lacked authority to bind Government to any such agreement).

In sum, only the Attorney General (or his authorized designee in the Civil Division) can waive, ratify, release, or accept a settlement in accord and satisfaction of the Government's rights in the instant cases. The Defendants have not and cannot plead that the Attorney General or an authorized designee waived, ratified, released, or accepted a settlement in accord and satisfaction of the Government's claims in these cases for the simple reason that none of those things has occurred. Accordingly, it is an exercise in futility to allow Defendants to try to re-plead affirmative defenses numbers 2, 3, and 5.

### 2. Equitable Principles Can Never Be Used To Obtain or Retain Funds in Violation of Appropriations Law.

In *Office of Personnel Management v. Richmond*, 496 U.S. 414, 424-425 (1990), the Supreme Court ruled that equitable estoppel could not compel the Government to make a payment that was not authorized by law. The Supreme Court based its holding on the Appropriations Clause, ruling that "judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy" which is contrary to a statutory appropriation. *Id.* at 426. The Supreme Court, moreover, observed that the same principles apply whether a private party invokes estoppel in an effort to obtain the payment of funds in violation of appropriations law or in an effort to retain funds that should have been withheld. *Id.* at 429.

Here, Defendants obtained payments from the Government using an illegal CPPC subcontract. Congress expressly prohibited the CPPC system of contracting, and all contracts and

13

subcontracts that violate the proscription are void *ab initio*. *See Urban Data Systems,* 699 F.2d at 1150-1151. As a result, no public funds may be lawfully appropriated or expended to pay invoices resulting from a CPPC contract. Defendants, therefore, cannot invoke equitable estoppel to retain any funds received as a result of their illegal CPPC subcontracting. *Id.* at 1154 (ruling that a defendant's equitable estoppel defense was invalid even if the Government was responsible for placing the CPPC language in the offending subcontracts). Likewise, Defendants cannot invoke waiver to retain any funds received as a result of their illegal CPPC subcontracting. *See Fluor Enterprises, Inc. v. United States,* 64 Fed.Cl. 461, 491-492 (Ct.Cl. 2005) ("The effect of [41 U.S.C.] § 254(b) [which then contained the proscription against cost-plus-a-percentage-of-cost contracts currently contained in 41 U.S.C. § 3905(a) and 10 U.S.C. §2306(a)] *is a plain limitation on the amount of money that a contracting officer may spend.*") (emphasis added).

Lastly, it is well-settled that waiver and ratification cannot be used where a contract is void *ab initio.* *See East St. Louis Connecting Ry. Co. v. Jarvis*, 92 F. 735, 744 (7th Cir. 1899) (where contract is void *ab initio* "[t]he contract cannot be ratified by either party because it could not have been authorized by either."); *CACI, Inc. v. Stone*, 990 F.2d 1233, 1236 (Fed. Cir. 1993) (defect that renders contract void prevents Government from ratifying the void contract as a matter of law). Because CPPC contracts are void *ab initio*, *see Urban Data Systems*, 699 F.2d at 1150-51, Government officials could not waive the Government's rights to recover the funds the Defendants' illegally obtained or ratify the Government's conduct in making those payments.

In sum, equitable defenses such as estoppel, waiver, and ratification are futile defenses to the Government's claims based on the CPPC scheme.

14

### 3. Estoppel Against The Government Requires Affirmative Misconduct That Cannot Be Alleged Here.

Even if some or all of the Government's claims were are not seeking the return of funds obtained in violation of appropriations law, Defendants' attempt to assert estoppel would be futile. To invoke estoppel against the Government, the Seventh Circuit requires the party invoking estoppel to plead and prove that the Government engaged in "affirmative misconduct." *See Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992) ("This court, along with several other circuits, allows a private party to assert equitable estoppel against the government in a very narrow category of cases—when the traditional elements of estoppel are shown and there is affirmative misconduct on the part of the government."). The Defendants have not and cannot plead any affirmative Government misconduct and, accordingly, it is futile to allow Defendants' leave to re-plead their estoppel defense.

### C. Affirmative Defense No. 4 (Course of Performance, Course of Dealing and/or Usage of Trade) Should Be Stricken Without Leave to Re-plead.

In their fourth affirmative defense, Defendants assert that the Government's claims are "barred by the doctrines of course of performance, course of dealing, and/or usage of trade." *See Patzer* ECF 99 & 100 at Affirmative Defense No. 4. The Court should not grant Defendants leave to re-plead this bare-bones "defense" because course of performance, course of dealing, and usage of trade are merely concepts of contract formation and interpretation. *See Dresser Industries, Inc., Waukesha Engine Div. v. Gradall Co.*, 965 F.2d, 1442, 1449-1452 (7th Cir. 1992); Restatement (Second) of Contracts, § 203(b). Since these matters are not affirmative defenses, it would be futile to allow Defendants' to re-plead them.

### D. Affirmative Defense No. 6 (Setoff) Should Be Stricken Without Leave to Re-plead.

In their sixth affirmative defense, Defendants assert that they "are entitled to setoff against any amounts for which they are found liable . . . to the extent Defendants made payments prior to judgment and for any amounts overpaid prior to judgment." *See Patzer* ECF 99 & 100 at Affirmative Defense No. 6. Generally, a "setoff" is "an equitable *counterclaim* against a plaintiff used to reduce a defendant's damages by an amount plaintiff already owes defendant arising from an independent transaction or claims." *Gronik v. Balthasar*, 118 F.Supp.3d 1106, 1108 (E.D. Wis. 2015) (emphasis added) (Adelman, J.). Defendants thus improperly pleaded their setoff claim as an affirmative defense.

More importantly, however, they failed to exhaust their administrative remedies. While there are exceptions under the CDA that allow the Government to bring claims against a contractor that "involve fraud" without first seeking a contracting officer decision, no such exception exists in the CDA for claims by a contractor against the Government. *See United States ex rel. Rille v. Sun Micro Systems, Inc.,* No. 04-cv-986, 2008 WL 4756170, *5 (E.D. Ark. October 28, 2008) ("Even if the exception applied to contractual behavior, the statutory language limits the exception to claims brought by the Government against the contractor."); *United States ex rel. Kirsch v. Armfield*, 56 F.Supp.2d 588, 592-93 (W.D. Pa. 1998) (dismissing affirmative defense of setoff because defendant should have pleaded setoff as a counterclaim and failed to exhaust administrative remedies).

In sum, Defendants must, at a minimum, submit their setoff claim to the contracting officer for a decision before asserting such a claim in litigation. Defendants have failed to do so, and thus it is futile to allow Defendants to assert this defense.

16

## E. Affirmative Defense No. 7 (Ultra Vires) Should Be Stricken Without Leave to Re-Plead.

In their seventh affirmative defense, Defendants assert that they "are not legally responsible for acts or omissions alleged in [the Government's claims] that were undertaken by employees, subcontractors, and others to the extent that those acts or omissions prove to have been undertaken outside the scope of employment or authority, as criminal acts, in secret, and/or without the knowledge of persons having legally sufficient levels of responsibility or authority with the relevant Defendant companies." *Patzer* ECF 99 & 100 at Affirmative Defense No. 7. The Court should not grant leave to re-plead this bare-bones "affirmative defense" because it is not a defense at all.

Indeed, Defendants appear to have copied this "affirmative defense" verbatim from a failed "affirmative defense" asserted by a defendant in another case. *See United States ex rel. Conyers v. Kellogg, Borwn & Root, Inc.,* No. 12-cv-4095, 2015 WL 1510544, *7 (C.D. Ill. 2015). As the court stated in that case:

> It is not clear to the Court that this is an affirmative defense, rather than an observation that, if Plaintiffs fails to prove elements of the violations they have charged against [defendant], their case will fail. Regardless, as the Government observes, this defense provides Plaintiffs with no notice, in even the most general way, of which acts, omissions, employees, subcontractors or potentially criminal acts are meant. It is stricken.

*Id.* Given that this statement is not an affirmative defense, the Court should deny leave to re-plead it.

17

## F. Affirmative Defense No. 8 (Failure to Mitigate Damages) Should Be Stricken Without Leave to Re-plead.

The Defendants' eighth affirmative defense asserts that the Government's claims "are barred in whole or in part because the government failed to mitigate its alleged damages." *See Patzer* ECF 99 & 100 at Affirmative Defense No. 10.

Failure to mitigate damages, however, is not a valid defense against the Government's FCA claims as a matter of law. *See United States v. HCR Manor Care, Inc.*, No. 09-cv-00013, 2015 WL 11117429, *1 (E.D. Va. Dec. 9, 2015) ("Failure to Mitigate Damages fails as a matter of law because it is well settled that the United States has no duty to mitigate damages in a fraud action, including an FCA claim."); *United States ex rel. Monahan v. Robert Wood Johnson University Hosp.,* No. 02-5702, 2009 WL 4576097, *8 (D. N.J. Dec. 1, 2009) ("The Government has no duty to mitigate damages in fraud actions, including those under the FCA.").

Likewise, mitigation of damages is not a defense to the Government's unjust enrichment claim because the recovery on an unjust enrichment claim is "the value of the benefit conferred on the defendant; any costs the plaintiff may have incurred are generally irrelevant." *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009). In other words, if the Government succeeds on its unjust enrichment claims, the Government's recovery will be based on the benefit it conferred on the Defendants (*e.g.*, their profits), not the loss suffered by the Government. The Government has nothing to mitigate under this standard of recovery. *See Ionian Corp. v. Country Mutual Ins. Corp.*, 88 F.Supp.3d 1187, 1200 (D. Ore. 2015) (holding that affirmative defense of mitigation of damages was not applicable to unjust enrichment claim).

For similar reasons, failure to mitigate damages cannot be a defense to the Government's TINA claim in the *Cimma* matter. An action under TINA is not an action for damages *per se* but

rather is a unique statutory and regulatory remedy that entitles the Government to a contract price or cost reduction for the amount by which the contract price or cost was increased by reason of the Defendants' failure to submit accurate cost or pricing data. *See* 10 U.S.C. § 2306a(e)(1)(a); 48 C.F.R. §52.215-10(a)(3). Even if the contract price or contract cost reduction remedies provided by TINA could be described as "damages," Defendants' mitigation of damages defense would still fail. TINA imposed an obligation on Defendants to disclose truthful information. When a defendant breaches an obligation to disclose truthful information to the plaintiff, the plaintiff is not required to mitigate unless and until the plaintiff has actual knowledge of its injury. *See Straits Financial LLC v. Ten Sleep Cattle Co.*, 900 F.3d 359, 375-76 (7th Cir. 2018). Defendants have not and cannot plead any facts to show that the Navy was aware of SSSI's submission of untruthful cost and pricing data in violation of TINA during the negotiation or performance of the *Cimma* contract.

### G. Affirmative Defense No. 9 (Laches) Should Be Stricken Without Leave to Re-plead.

In their ninth affirmative defense, Defendants contend that the Government's claims "are barred by the equitable defense of laches." *See Patzer* ECF 99 & 100, Affirmative Defense No. 9. This affirmative defense fails for several reasons.

The Seventh Circuit has recognized that it "seems unlikely" that laches applies without limitation to suits brought by the Government. *United States v. Administrative Enterprises, Inc.,* 46 F.3d 670, 673 (7th Cir. 1995). In *Administrative Enterprises*, the Seventh Circuit recognized that many courts hold that laches cannot be asserted against the Government, period, and that others cases suggest that laches may not apply against the Government where a claim is governed by an express statute of limitations or in the absence of egregious circumstances. *Id.* at 673.

19

Here, Defendants concede there are express statutes of limitations applicable to all the Government's remaining counts—indeed, Defendants rely on those applicable statutes of limitations for their tenth affirmative defense. Defendants also have not and cannot point to any egregious circumstances requiring application of laches. Given the conceded statutes of limitations (with which the Government complied, as explained below) and the absence of egregious facts, the Seventh Circuit would not allow a laches defense in this case. The Court should thus strike the ninth affirmative defense without leave to re-plead. *See Menominee Tribal Enterprises,* 601 F.Supp.2d at 1075 (rejecting laches defense because "regardless of whether laches may *ever* be a defense against the Government, it is clear that it would only be applied in an unusual case").

### H. Affirmative Defense No. 10 (Statutes of Limitations) Should Be Stricken Without Leave to Re-plead.

In their tenth affirmative defense, Defendants assert that the Government's claims "are barred in whole or in part by the applicable statutes of limitations." *See Patzer* ECF 99 & 100, Affirmative Defense No. 10. Defendants' admissions, however, establish that the Government's claims are timely.

The Government's contract and quasi-contractual claims for unjust enrichment are subject to a six-year statute of limitations. *See United States v. Bank of Cicero,* 957 F.2d 1362, 1372 (7th Cir. 1992) (holding statute of limitations set forth in 28 U.S.C. § 2415(a) applicable to both contract and quasi-contract claims for unjust enrichment), *overruled on other grounds*, *United States v. Luce*, 873 F.3d 999 (7th Cir. 2017). There is also a *minimum* six-year statute of limitations applicable to the Government's FCA claims, and under certain circumstances, the statute of limitations extends to ten years. *See* 31 U.S.C. § 3731(b)(1)-(2). In sum, the *minimum* statute of

20

limitations applicable to all the Government's claim in these cases is six years. Defendants make admissions in their answers that confirm that the Government brought all its claims within this *minimum* six-year statute of limitations. The Court should thus strike the tenth affirmative defense without leave to re-plead.

### 1.   The Government's Claims in *Patzer* Are All Timely

Relator Mary Patzer filed her *qui tam* complaint on June 10, 2011. The Government subsequently intervened in the *Patzer* action and filed a complaint-in-intervention on October 14, 2014. The FCA provides that, for "statute of limitations purposes," the Government's complaint-in-intervention "shall relate back to the date of the complaint of the person who originally brought the action, to extent that the claim of the Government arises out of the conduct, transactions, or occurrences set forth, or attempted to be set forth, in the prior complaint of that person." 31 U.S.C. § 3731(c). The Government's complaint-in-intervention asserted claims that all arose out of the conduct, transactions, or occurrences set forth, or attempted to be set forth in relator Patzer's complaint. Moreover, while the Government subsequently amended its complaint-in-intervention, most recently on November 1, 2017, those amended pleadings all relate back to the Government's original complaint-in-intervention under Fed.R.Civ.P 15(c)(1)(B), which permits relation back where a claim "arose out of the conduct, transaction or occurrence set out – or attempted to be set out—in the original pleading." Accordingly, all of the Government's FCA and other claims in the *Patzer* case relate back to the filing of the relator's complaint for statute of limitations purposes. *See United States ex rel. Vavra v. Kellog Brown & Root, Inc.*, 848 F.3d 366, 382 (5th Cir. 2017) (holding that any claim, not just FCA claim, asserted by government relates

21

back to relator's complaint as long as the claim arises out of the same conduct, transactions, or occurrences at issue in relator's complaint).

The *minimum* six-year statute of limitations for FCA violations begins to run when a false claim is submitted or, if paid, the date of payment. *United States ex rel. Kreindler & Kreindler v. United Tech. Corp.*, 985 F.2d 1148, 1157 (2nd Cir. 1993). Similarly, the six-year statute of limitations for quasi-contractual remedies such as unjust enrichment does not begin to run until a loss is suffered or a benefit is conferred. *United States of America v. First National Bank of Cicero*, 957 F.2d 1362, 1372 (7th Cir. 1992). SSSI submitted its first public voucher to the United States under the contract on October 13, 2006, and the Government paid that first voucher on October 13, 2006. *See Patzer* ECF 80 at ¶ 53 & Ex. B. Defendants admitted these dates in their answer. *See Patzer* ECF 99 at ¶ 53. Since Patzer filed her complaint on June 10, 2011, less than six years after the earliest date that the Government paid one of SSSI's claims, the Government's FCA and unjust enrichment claims are timely.

The six-year statute of limitations for breach of contract generally begins to run at the time of breach. *United States v. Beck*, 758 F.2d 1553, 1558 (11th Cir. 1985). A breach of contract plainly cannot occur until after the execution of that contract. As admitted by Defendants in their answer, the contract at issue in *Patzer* was executed on June 1, 2006. *See Patzer* ECF 80 at ¶ 37; ECF 99 at ¶ 37. Since Patzer filed her complaint on June 10, 2011, less than six years after the contract was executed, the Government's breach of contract claims are all timely.

## 2.   The Governments' Claims in *Cimma* Are All Timely

A similar analysis applies in the *Cimma* case. Relator Peter Cimma filed his *qui tam* complaint on March 8, 2013. All of the Government's claims in its complaint-in-intervention,

22

filed on May 26, 2017, arise out of the same conduct, transactions, and occurrences at issue in Cimma's *qui tam* complaint and, by operation of 31 U.S.C. § 3731(c), the Government's claims thus relate back for statute of limitations purposes to the date Cimma filed his complaint.

As Defendants admitted in their answer, SSSI submitted its first invoice under the contract on May 4, 2011, and the Government paid the first invoice on May 9, 2011. *See Cimma* ECF 39 at ¶ 46 & Ex. 3; *Patzer* ECF 100 at ¶ 46. Since Cimma filed his complaint on March 8, 2013, less than six years after the earliest date that the Government paid one of SSSI's claims, the Government's FCA and unjust enrichment claims are timely.

Turning to the Government's breach of contract claims, Defendants admitted in their answer that the contract was executed on March 30, 2011. *See Cimma* ECF 39 at ¶ 40; *Patzer* ECF 100 at ¶ 40. Since a breach could not occur until the contract came into existence and Cimma filed his complaint less than six years after the contract was executed, the Government's breach of contract claims are timely.

Finally, as for the Government's TINA claim against SSSI for submission of defective certified cost or pricing data (*Cimma* Count VII), the statute of limitations is also six years from the accrual of the claim. *See United States ex rel. Campbell v. Lockheed Martin Corp.*, 282 F.Supp.2d 1324, 1135 (M.D.Fla. 2003). Defendants admitted that SSSI submitted its Certificate of Cost or Pricing Data on March 25, 2011. *See Cimma* ECF 39 at ¶ 38; *Patzer* ECF 100 at ¶38. Because the Government's TINA claim arising out of the same conduct, transactions, and occurrences as Cimma's *qui tam* complaint, *i.e.*, SSSI's fraudulent pricing practices, the Government's TINA claim relates back to the filing of Cimma's complaint on March 8, 2013.

*See Lockheed Martin Corp.*, 282 F.Supp.3d at 1336.   The government's TINA claim thus is timely.

## I.  Affirmative Defense No. 11 (Express Contract) Should be Stricken Without Leave To Re-plead.

Defendants' eleventh affirmative defense states that the Government's unjust enrichment claims against Derco and SSSI "are barred because there is an express contract between SSSI and the United States Navy's Naval Air Systems Command."  *See Patzer* ECF 99 & 100 at Affirmative Defense No. 11.   As a general matter, the existence of a contract will bar the assertion of quasi-contractual claims against the parties to the contract.   An exception to this rule exists where, as in these cases, the plaintiff alleges that the contracts were fraudulently induced:

> Generally, plaintiffs who have alleged the existence of an express contract cannot bring claims for unjust enrichment or payment by mistake, because "the existence of a valid contract between the parties negates the need for the court to imply a contract by law." [citations omitted] There is, however, an exception for False Claims Act cases where the government alleges that the contract was invalid because the defendant fraudulently induced the government to enter into the contract—including an agreement on a particular price.

*United States v. DynCorp International, LLC*, 253 F.Supp.3d 89, 114 (D.D.C. 2017).

Here, the Government alleges in *Patzer* and *Cimma* that Defendants agreed to engage in CPPC subcontracting *before* the contracts were executed and made false statements to the Government in the run-up to the awards of the contracts—a classic case of fraudulent inducement. In addition, this affirmative defense also fails with respect to the Government's unjust enrichment claims against Derco because the Government only had a contract with SSSI, not Derco.   The Court should thus strike the Defendants' eleventh affirmative defense without leave to re-plead it.

24

## CONCLUSION

For all of the foregoing reasons, this Court should enter an order striking all of the Defendants' affirmative defense without leave to re-plead them.

Dated this 9th day of October, 2018.

JOSEPH H. HUNT
Assistant Attorney General

MATTHEW D. KRUEGER
United States Attorney
Eastern District of Wisconsin


/s/ Michael A. Carter

MICHAEL A. CARTER
Assistant United States Attorney
Eastern District of Wisconsin
State Bar No. 1090041

LISA T. WARWICK
Assistant United States Attorney
Eastern District of Wisconsin
State Bar No. 1017754
517 E. Wisconsin Ave.
Milwaukee, WI 53202
(414) 297-1700
Fax: (414) 297-4394
lisa.warwick@usdoj.gov
Michael.A.Carter@usdoj.gov

MICHAEL D. GRANSTON
MICHAL TINGLE
ALAN S. GALE
GARY NEWKIRK
Attorneys, Civil Division
United States Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
(202) 307-6296
Fax: (202) 616-3085
alan.gale@usdoj.gov

25